## UNITED STATES COURT OF INTERNATIONAL TRADE

—————————————————————————x
:
CARPARTS.COM, INC.                                    :
:
Plaintiff,                          :
:
v.                                :
:
UNITED STATES; JOSEPH R. BIDEN, IN          :
HIS OFFICIAL CAPACITY AS PRESIDENT OF   :
THE  UNITED STATES; GINA RAIMONDO,        :
IN HER OFFICIAL CAPACITY AS UNITED          :
STATES  SECRETARY OF COMMERCE;            :     Court No. 22-00121
UNITED STATES DEPARTMENT OF                  :
COMMERCE; CHRIS MAGNUS, IN HIS             :
OFFICIAL CAPACITY AS                                  :
COMMISSIONER, UNITED STATES CUSTOMS :
AND BORDER PROTECTION; UNITED             :
STATES CUSTOMS AND BORDER                    :
PROTECTION,                                              :
:
Defendants.                        :
—————————————————————————x

## COMPLAINT

Plaintiff CarParts.com, Inc., by and through its counsel, brings this action and alleges as follows.

## SUMMARY

1.      On January 24, 2020, then President Donald J. Trump issued Proclamation 9980 imposing a 25 percent *ad valorem* tariff on imports of certain "derivative" steel products, purportedly pursuant to his power under Section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. § 1862) ("Section 232"). *Adjusting Imports of Derivative Aluminum Articles and Derivative Steel Articles into the United States*, 85 Fed. Reg. 5281 (Jan.  29, 2020) ("Proclamation 9980"). These tariffs became effective February 8, 2020, and applied to products including bumper stampings of steel. *Id*. at 5283-84, 5290-92.

2.      Plaintiff is a United States importer of steel bumper stampings for motor vehicles, whose products are subject to the 25 percent *ad valorem* tariffs imposed by Proclamation 9980. Because plaintiff has been required to pay these tariffs, Plaintiff is adversely affected by these tariffs. Plaintiff did not have an opportunity to provide input into the President's decision to impose these tariffs because there was no public announcement about these tariffs until the day Proclamation 9980 was issued on January 24, 2020.

3.      Section 232 expressly limits the President's authority to impose tariffs. Before the President may do so, the Secretary of the U.S. Department of Commerce ("Commerce") must first investigate whether imports of the products at issue actually threaten to impair the national security. Within 270 days of beginning that investigation, the Commerce Secretary must submit to the President, and publish in the FEDERAL REGISTER, a report of the findings. 19 U.S.C. § 1862(b)(3). Within 90 days of receiving a report that such imports do pose a threat, the President must decide whether he agrees and, if so, the nature and duration of any remedial action, and within 15 days of making that decision, that action must be implemented. *Id.* § 1862(c)(1)(A)(ii), (1)(B).

4.      Proclamation 9980 did not comply with statutory requirements. The Commerce Secretary did not conduct a Section 232 investigation to assess whether derivative steel products such as steel bumper stampings threatened national security. The Commerce Secretary neither submitted a written report to the President nor published one in the FEDERAL REGISTER, relating to those imports. Without any such report, the statutory deadlines for Presidential decision-making and implementation were also not met.

5.      In 2017, the Commerce Secretary investigated the effects of imports of certain steel products on national security, resulting in a January 2018 report to the President. U.S.

Department of Commerce, Bureau of Industry and Security, Office of Technology Evaluation, THE EFFECT OF IMPORTS OF STEEL ON THE NATIONAL SECURITY: AN INVESTIGATION CONDUCTED UNDER SECTION 232 OF THE TRADE EXPANSION ACT OF 1962, AS AMENDED (Jan. 11, 2018) ("Steel Report"). Based on the Steel Report, then President Trump on March 8, 2018, issued Proclamation 9705 to impose 25 percent *ad valorem* tariffs on U.S. imports of certain steel products. *Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 11,625 (Mar. 15, 2018) ("Proclamation 9705"). That investigation – and the tariffs imposed by the President pursuant to that investigation – did not cover the derivative articles of steel covered by Proclamation 9980.

6.      Proclamation 9980 is unlawful because Commerce neither complied with its regulations nor provided reasonable notice to affected persons; the President failed to comply with the Section 232 requirements; Proclamation 9980 violated protections afforded to Plaintiff by the Fifth Amendment.

## JURISDICTION

7.      This Court has jurisdiction over the instant action pursuant to 28 U.S.C. § 1581(i)(1)(B).

8.      28 U.S.C. § 1581 provides that "the U.S. Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandize for reasons other than the raising of revenue," 28 U.S.C. § 1581(i)(1)(B), and "administration and enforcement with respect to the matters referred to in paragraphs (A)–(C) of this subsection and subsections (a)–(h) of this section." *Id.* § 1581(i)(1)(D).

9.     Section 232 is a law, "providing for tariffs,  duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue," as well as for "administration and enforcement with respect to" such tariffs, duties and fees. Thus, this matter involves the administration and enforcement of matters referred to in 28 U.S.C. § 1581(i)(1)(B).

10.     Proclamation 9980 does not constitute a determination reviewable under this Court's jurisdiction established at 28 U.S.C. § 1581(a)–(h).  Accordingly, this Court has subject matter jurisdiction of this action under 28 U.S.C. § 1581(i) and may order the relief requested pursuant to 28 U.S.C. § 2643.

11.     The Commerce Secretary failed to follow applicable regulations in giving "assessments"  to the President, as referenced in Proclamation 9980. The Court reviews such regulatory violations pursuant to the Administrative Procedures Act ("APA"), which provides for broad judicial review of agency actions brought by "person{s} suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute." 5 U.S.C. § 702.

## PARTIES

12.     Plaintiff is an importer of steel bumper stampings subject to Proclamation 9980. As the importer of record, Plaintiff was required to pay the 25 percent *ad valorem* tariff imposed by Proclamation 9980 on its imports of steel bumper stampings into the United States.

13.     Defendant United States is the federal government to which Section 232 tariffs are paid and is the statutory defendant under 28 U.S.C. § 1581(i).

14.     Defendant Joseph R. Biden currently holds the position of President of the United States. In this capacity, he oversees the implementation of Proclamation 9980 that is the subject of this Complaint.

15.    Defendant Commerce is the agency responsible for initiating and conducting Section 232 investigations, and for providing findings and recommendations to the President.

16.    Defendant Gina Raimondo currently holds the position of the Secretary of Commerce and is named in this Complaint in her official capacity as such.

17.    Defendant U.S. Customs and Border Protection is the agency that administers and enforces Section 232 tariffs, including the 25 percent *ad valorem* tariffs imposed on certain derivative steel products under Proclamation 9980.

18.    Defendant Chris Magnus is the Commissioner of U.S. Customs and Border Protection. In this capacity, he oversees CBP's collection of duties paid by Plaintiff under Proclamation 9980 and is named in this complaint in his official capacity.

## STANDING

19.    Plaintiff has standing to challenge the Defendants' unlawful acts in issuing and implementing Proclamation 9980 pursuant to 28 U.S.C. § 2631(i). That statutory subsection provides as follows: "{a}ny civil action of which the Court of International Trade has jurisdiction, other than an action specified in subsections (a)–(h), may be commenced in the court by any person  adversely affected or aggrieved by agency action within the meaning of section 702 of title 5." Section 702 provides that "{a} person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

20.    Plaintiff is the importer of record in the United States and paid and continues to pay the 25 percent *ad valorem* tariff on steel bumper stampings imposed by Proclamation 9980.

21.    Plaintiff is therefore a "person . . . adversely affected or aggrieved" by the issuance and  implementation of Proclamation 9980, within the meaning of 5 U.S.C. § 702, and

has suffered and continues to suffer concrete and particularized injury from the issuance and implementation of Proclamation 9980.

## TIMELINESS OF THIS ACTION

22.     Plaintiff contests the unlawful assessment of the 25% ad valorem tariff on its imports of steel bumper stampings.  The instant action was filed within two years of the date of liquidation of the consumption entries on which Plaintiff paid duties pursuant to Proclamation 9980. This action is therefore timely because it is filed within two  years after the cause of action first accrued. 28 U.S.C. § 2636(i).

## STATEMENT OF FACTS

### I.    Section 232

23.     Section 232, titled "Safeguarding National Security," authorizes the President – upon a "finding" that "an article is being imported into the United States in such quantities or under such circumstances as to threaten to impair the national security" – "to adjust  the imports of the article and its derivatives so that such imports will not threaten to impair the national security." 19 U.S.C. § 1862(c)(1)(A)(ii). Section 232 dictates the administrative process required before the President can make such an action. *Id*. § 1862(b).

24.     A Section 232 action commences with a request from "the head of any department or  agency," including the Commerce Secretary himself, to the Commerce Secretary, who "shall immediately initiate an appropriate investigation to determine the effects on the national security of imports of the article which is the subject of such request." *Id.* § 1862(b)(1)(A). Commerce's Bureau of Industry and Security ("BIS") conducts Section 232 investigations in accordance with the federal regulations codified at 15 C.F.R. part 705.

25.     Section 232 requires that the Commerce Secretary conduct the investigation in consultation with the Secretary of the Department of Defense ("Defense" or "DoD") and other

6

U.S. officials, as appropriate, to determine the effects of the specified imports on the national security. Specifically, the Commerce Secretary shall "immediately provide notice to the Secretary of Defense of any investigation," shall "consult with the Secretary of Defense regarding the methodological and policy questions raised in any investigation," and if appropriate, shall "hold public hearings or otherwise afford interested parties an opportunity to present information and advice." 19 U.S.C. § 1862(b)(1)(B), (2)(A). The "Secretary of Defense shall provide the {Commerce} Secretary an assessment of the defense requirements of any article" under investigation. *Id*. § 1862(b)(2)(B).

26.     While Section 232 does not explicitly define "national security," it provides a non-exhaustive list of factors that the Secretary and President <u>must</u> consider, including:

> domestic production needed for projected national defense requirements, the capacity of domestic industries to meet such requirements, existing and anticipated availabilities of the human resources, products, raw materials, and other supplies and services essential to the national defense, the requirements of growth of such industries and such supplies and services including the investment, exploration, and development necessary to assure such growth, and the importation of goods in terms of their quantities, availabilities, character, and use.

*Id*. § 1862(d).

27.     <u>Within 270 days</u> after initiating an investigation, the Commerce Secretary "shall submit to the President" and publish in the FEDERAL REGISTER "a report on the findings of such investigation with respect to the effect of the importation of such article in such quantities or under such circumstances upon the national security and, based on such findings, the recommendations of the Secretary for action or inaction under th{e} section." *Id.* § 1862(b)(3)(A). "If the Secretary finds that such article is being imported into the United States in such quantities or under such circumstances as to threaten to impair the national security, the Secretary shall so advise the President in such report." *Id.*

28.      "Any portion of the report submitted by the {Commerce} Secretary under {19 U.S.C. § 1862(b)(3)}(A) which does not contain classified information or proprietary information shall be published in the Federal Register." *Id.* § 1862(b)(3)(B).

29.      A report by the Commerce Secretary finding that an article is being imported into the United States in such quantities or under such circumstances as to threaten to impair the national security triggers a duty of the President to act. <u>Within 90 days</u>, and no more, the President must "determine  whether the President concurs with the finding of the Secretary." *Id.* § 1862(c)(1)(A).

30.      Conversely, if the Commerce Secretary does not find that an article is being imported into the United States in such quantities or under such circumstances as to threaten to impair the national security, the President has neither a duty nor the authority to take act under Section 232.

31.      If the President concurs with the Commerce Secretary that an article is being imported into the United States in such quantities or under such circumstances as to threaten to impair the national security, the President must, <u>within 90 days</u>, "determine the nature and duration of the action that, in the judgment of the President, must be taken to adjust the imports of the article and its  derivatives so that such imports will not threaten to impair the national security." *Id.* § 1862(c)(1)(A)(ii).

32.      After making a determination to take action, <u>the President is required under the statute to implement such action within 15 days.</u>  *Id.* § 1862(c)(1)(B).

33.      Alternatively, under the statute,  the President may "negotiat{e} . . . an agreement which limits or restricts the importation into, or the exportation to, the United States of the article that threatens to impair national security . . . ." *Id.* § 1862(c)(3)(A)(i).

34.     If the President chooses to negotiate an article-specific agreement, but either "no such agreement is entered into" within 180 days or the resulting agreement "is not being carried out or is ineffective," the President must "take such other actions as the President deems necessary to adjust the imports of such article so that such imports will not threaten to impair the national security." *Id.* § 1862(c)(3)(A)(ii) (emphasis added).

35.     Finally, the President must "submit to the Congress a written statement of the reasons" explaining his determination "{b}y no later than the date that is 30 days after the date on which the President makes any determinations." *Id*. § 1862(c)(2).

36.     Lawful action taken by the President under Section 232 must comply with the clear preconditions, including temporal preconditions, set by the Congress within the statute. *Fed. Energy Admin. v. Algonquin SNG, Inc.*, 426 U.S. 548, 559 (1976).  Section 232 requires that the President take action before the expiration of his congressionally-delegated authority. *PrimeSource Building Products, Inc. v. United States*, 505 F. Supp. 3d 1352, 1357 (Ct. Int'l. Trade 2021), *appeal filed*, *PrimeSource Building Products, Inc. v. United States*, No. 21-2066 (Fed. Cir. filed June 17, 2021) (finding that "{b}ecause the President issued Proclamation 9980 after the Congressionally-delegated authority to adjust imports of the products addressed in that proclamation had expired, Proclamation 9980 was action outside of delegated authority . . . .{and} we find in the untimeliness of Proclamation 9980 a significant procedural violation.").

### II.     Commerce's 2017 Investigation

37.     On April 19, 2017, Commerce Secretary Wilbur Ross initiated an investigation under Section 232 into the effects of certain steel imports on the national security of the United States. As part of the investigation, Commerce collected written public comments, held a public hearing, and consulted with the Defense Secretary. *Notice Request for Public Comments and*

*Public Hearing on Section 232 National Security Investigation of Imports of Steel*, 82 Fed. Reg.

19, 205 (Apr. 26, 2017).

38.     Commerce's notice of its 232 investigation referenced only steel products and not

derivative products such as steel bumper stampings. Based on the exclusive reference to steel

products, Plaintiff had no reason to believe that its products would be subject to the investigation.

39.     On January 11, 2018, BIS issued the Steel Report. The Steel Report expressly stated

that the scope of the investigation was limited to certain steel articles described and classified

under  Harmonized Tariff System subheadings 7206.10 through 7216.50, 7216.99 through

7301.10, 7302.10, 7302.40 through 7302.90, and 7304.10 through 7306.90.  Steel Report at 21.

None of these products encompassed derivative steel products such as Plaintiff's steel bumpers.

40.     The Steel Report observed that the United States' domestic steel industry was in

decline, that shrinking "capacity utilization rates" were deterring capital investment and that

foreign imports had contributed to the falloffs in domestic production. Steel Report at 3-5.

"{T}he Secretary of Commerce conclude{d} that the present quantities and circumstance of steel

imports are 'weakening our internal economy' and threaten to impair the national security as

defined in Section 232." *Id.* at 5. Commerce identified global excess steel capacity as a

circumstance that contributes to the "weakening of our internal economy" that "threaten{s} to

impair" the national security as defined in Section 232. *Id.* at 5, 16. It explained that "U.S. steel

production capacity has remained flat since 2001, while other steel producing nations have

increased their production capacity, with China alone able to produce as much steel as the rest of

the world combined." *Id.* at 16.

41.     Commerce recommended that the President take immediate action to adjust the

level of these imports through quotas or tariffs. *Id.* at 58-61. Commerce recommended three

alternative actions, each of which had the stated objective of enabling the U.S. steel industry to operate at an average capacity utilization rate of 80 percent or better. *Id.* at 6-9.

42.     On February 18, 2018, the Defense Secretary sent a letter to Commerce with its position on the Steel Report recommendations. The Defense Secretary conveyed that in his view, "U.S. military requirements for steel . . . only represent about three percent of U.S. production" and "{t}herefore, DoD does not believe that the findings in the reports {by Commerce} impact the ability of DoD programs to acquire the steel . . . necessary to meet national defense requirements." Memorandum from Sec'y of Def. to Sec'y of Commerce (Feb. 18, 2018). The Defense Secretary further stated that DoD "continues to be concerned about the negative impact on our key allies" of "the recommended options within the reports." *Id.*

### III.     Proclamation 9705

43.     Based on the Steel Report, President Trump on March 8, 2018, issued Proclamation 9705 to impose 25 percent *ad valorem* tariffs on U.S. imports of certain steel products. Proclamation 9705, 83 Fed. Reg. 11,625 (Mar. 15, 2018).

44.     The President subsequently exempted certain countries from the imposition tariffs on steel products under Proclamation 9705. *Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 20,683, 20,685 (May 7, 2018) (Proclamation 9740 exempting South Korea); *Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 25,857, 25,858 (June 5, 2018) (Proclamation 9759 exempting Argentina and Brazil subject to quotas, as well as Australia without quota); *Adjusting Imports of Steel Into the United States*, 84 Fed. Reg. 23,987, 23,988 (May 23, 2019) (Proclamation 9894 exempting Canada and Mexico).

45.     Neither bumper stampings nor any other derivative steel article were covered by the initial 2018 Section 232 action.

**IV.    Proclamation 9980**

46.    On January 24, 2020, nearly two years after Proclamation 9705 imposing tariffs on steel, the President – without notice – issued Proclamation 9980 to impose additional tariffs of 25 percent on certain steel-derivative products. Proclamation 9980, 85 Fed. Reg. 5281 (Jan 29, 2020). The President claimed that "domestic steel producers' utilization ha{d} not stabilized for an extended period of time at or above the 80 percent capacity utilization level" as the reason for imposing additional tariffs on imports of certain derivative articles. *Id.*

47.    Proclamation 9980 did not cover imports from countries previously exempted from the 2018 Section 232 measures. Proclamation 9980 provided no rationale for exempting derivative steel articles from Argentina, Australia, Brazil, Canada, Mexico, and South Korea.

48.    Proclamation 9980 relied on the Steel Report as providing its legal authority. Yet the investigation leading to issuance of the Steel Report did not include bumpers or any derivative steel product. In violation of Section 232, the Commerce Secretary failed to: conduct a new investigation; consult with the Defense Secretary; submit a report to the President; and publish a report in the FEDERAL REGISTER – all of which were required by statute. The Commerce Secretary further failed to comply with applicable regulations or provide for any public comment.

49.    Instead, the President claimed that the Commerce Secretary <u>informed</u> him that "certain derivatives of steel articles have significantly increased since the imposition of the tariffs and quotas" and the "net effect of the increase of imports of these derivatives has been to erode the customer base for U.S. producers of . . . steel and undermine the purpose of the proclamations adjusting imports of . . . steel articles to remove the threatened impairment of the national security." Proclamation 9980, 85 Fed. Reg. at 5282. The Section 232 prerequisites

were not met by the Commerce Secretary, who failed to conduct an investigation of articles not covered by the 2017 investigation. To date, the Commerce Secretary's communication "informing" the President that derivative articles impair national security has not been made public.

50.     The President promulgated Proclamation 9980 more than 600 days after the window to take action had lapsed, constituting a violation of Section 232. *PrimeSource*, 505 F. Supp. 3d 1352, 1357 (Ct. Int'l. Trade 2021) (finding that "the 90-day period commencing with the President's receipt of a report of the Commerce Secretary satisfying the requirements of Section 232(b)(3)(A), and any action to implement that determination was required to have been taken, if at all, during the 15-day period following that determination."); *PrimeSource Building Products, Inc. v. United States*, 497 F. Supp. 3d 1333, 1351 (Ct. Int'l. Trade 2021) (holding that "the 90 day and 15-day time limitations in Section 232(c)(1) expressly confine the exercise of the President's discretion *regardless* of whether the President determines to adjust imports only of the 'article' named in the Secretary's report or, instead, to adjust imports of the 'article and its derivatives.'") [hereinafter "*PrimeSource I*"].

51.     On January 29, 2020, the President published in the FEDERAL REGISTER a list of products covered by Proclamation 9980, 85 Fed. Reg. at 5286, 5290. The covered products included bumper stampings of steel. *Id*. at 5291.

52.     In selecting the derivative articles included in Proclamation 9980, the President did not apply the criteria set forth in Proclamation 9980, which purported to include any derivative articles of steel where: (a) steel represents, on average, two-thirds or more of the total cost of materials of the derivative article; (b) import volumes of such derivative article increased year-to-year since June 1, 2018, following the imposition of the tariffs in Proclamation

9705, in comparison to import volumes of such derivative article during the two preceding years; and (c) import volumes of such derivative article following the imposition of the tariffs exceeded the four percent average increase in the total volume of goods imported into the United States during the same period since June 1, 2018.

## STATEMENT OF CLAIMS

### COUNT 1: VIOLATIONS OF SECTION 232

53.     Plaintiff incorporates by reference paragraphs 1-52 of this Complaint.

54.     Congress has the exclusive "power to lay and collect taxes, duties, imposts and excises" and "to regulate Commerce with foreign nations." U.S. CONST. Art. 1, § 8. Through Section 232, Congress expressly delineated when and how the President may act to address imports that threaten to impair the national security of the United States. 19 U.S.C. § 1862. The statute requires an investigation by the Commerce Secretary, including notification to the Defense Secretary, and sets forth factors that the Commerce Secretary shall consider – culminating in a report to the President within 270 days after the commencement of an investigation. *Id*. § 1862(b). Proclamation 9980 violated Section 232 by failing to comply with these statutory requirements.

55.     Section 232 places a mandatory time limit on the President's authority to take action against imports. 19 U.S.C. § 1862(c); *PrimeSource*, 505 F. Supp. 3d at 1357. The President is required to act within 90 days of receipt of a report by the Secretary of Commerce, and to implement such action within the 15-day period following the determination to take action. 19 U.S.C. § 1862(c); *PrimeSource*, 505 F. Supp. 3d at 1357.

56.     In issuing Proclamation 9980 more than 600 days after the 105-day window to take action had lapsed, the President failed to follow the procedural requirements of Section 232.  The

President's action to raise duties on imports of derivative steel and aluminum products violates the statute and is therefore unlawful.

## COUNT 2: VIOLATIONS OF APA

56.     Plaintiff incorporates by reference paragraphs 1-56 of this Complaint.

57.     Congress has the exclusive "power to lay and collect taxes, duties, imposts and excises" and "to regulate Commerce with foreign nations." U.S. CONST. Art. 1, § 8. Through Section 232, Congress expressly delineated when and how the President may act to address imports that threaten to impair the national security of the United States. 19 U.S.C. § 1862. The statute requires an investigation by the Commerce Secretary, including notification to the Defense Secretary, and sets forth factors that the Commerce Secretary shall consider – culminating in a report to the President within 270 days after the commencement of an investigation. *Id*. § 1862(b). Following public notice-and-comment, Commerce promulgated regulations establishing the procedures it will follow in conducting Section 232 investigations. 15 C.F.R. part 705. Proclamation 9980 violated Section 232 by failing to comply with these statutory requirements and regulatory procedures.

58.     The President based Proclamation 9980 on "assessments" provided by the Commerce Secretary regarding an alleged national security threat by imports of derivative steel products. Those "assessments" recommending imposition of 25 percent duties failed to comply with the lawfully promulgated regulatory procedures outlined under 15 C.F.R. § 705 and therefore constituted rulemaking under the APA, 5 U.S.C. § 551(4)-(5).

59.     In providing such "assessments" – which remain undisclosed – the Commerce Secretary violated applicable statutory and regulatory requirements by failing to, *inter alia*: initiate an investigation; notify the Defense Secretary; provide notification to parties interested in

derivative steel products; prepare a report; and publish a summary of that report in the FEDERAL REGISTER. Moreover, these assessments were not made in the timeframe mandated by Section 232: the Steel Report and Proclamation 9705 issued nearly two years before Proclamation 9980.

60.    The Commerce Secretary's "assessments" regarding the alleged national security threat from derivative steel articles, the stated basis for Proclamation 9980, bypassed necessary investigative and consultative steps. In so doing, Commerce failed to provide interested parties with sufficient notice and an opportunity to comment in violation of the APA, 5 U.S.C. § 553.

61.    Commerce's failure to provide a reasoned explanation for its "assessments" is arbitrary and capricious under the APA, and, therefore, not in accordance with law.

### COUNT 3: FIFTH AMENDMENT VIOLATIONS

62.    Plaintiff incorporates by reference paragraphs 1-61 of this Complaint.

63.    The Fifth Amendment to the Constitution "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

64.    Plaintiff has a property interest in its imports of steel derivative products. Section 232 specifies that the Secretary of Commerce "shall . . . if it is appropriate and after reasonable notice, hold public hearings or otherwise afford interested parties an opportunity to present information and advice relevant to such investigation." 19 U.S.C § 1862(b)(2)(A)(iii) (emphasis added). The Commerce Secretary originally held hearings on the underlying steel articles, thereby deeming such notice and comment appropriate. The Federal Circuit recognizes a property interest for Fifth Amendment due process purposes for importers facing a deprivation of their property by the federal government. *NEC Corp. v. United States*, 151 F.3d 1361, 1370-71 (Fed.

Cir. 1998). The U.S. Supreme Court dictates that: "(D)ue process is flexible and calls for such procedural protections as the   particular situation demands." *Mathews*, 424 U.S. at 323 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

65.     Plaintiff did not have notice that its imports could be subject to duties under Section 232, more than two years after the investigation cited in Proclamation 9980 as the legal basis for the extension of tariffs to new products.

66.     By failing to provide parties with notice and comment opportunity before issuing Proclamation 9980 imposing Section 232 tariffs on certain steel derivative products, the President violated Plaintiff's due process rights protected under the Fifth Amendment.

67.     The equal protection of the laws of the United States, guaranteed by the Fifth Amendment's Due Process clause, prohibits the government from unjustifiably treating similarly situated persons differently. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). A classification that "neither burdens a fundamental right nor targets a suspect class" will be upheld "so long as it bears a rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631 (1996).

68.     Plaintiff is in all relevant respects similarly situated to importers into the United States of derivative products of steel that are not listed in Proclamation 9980, despite such derivative articles meeting the three criteria set forth by the President for inclusion in Proclamation 9980.

69.     Plaintiff is in all relevant respects similarly situated to importers into the United States of derivative products of steel that are listed in Proclamation 9980, but which are exempt from the 25 percent *ad valorem* tariff on derivative steel products because such importers source their product in Argentina, Australia, Brazil, Canada, Mexico, or South Korea.

70.     Proclamation 9980 purports to remove the threatened impairment of the national

security of the United States by adjusting importation of certain derivative steel articles that could displace demand for domestic steel articles used to manufacture such derivative articles.

71.     The inclusion of steel bumpers as derivative articles subject to Proclamation 9980, and exclusion of other derivative articles meeting the three criteria for inclusion set forth in Proclamation 9980, and despite the importation of such other derivative articles into the United States displacing a greater portion of domestic demand for articles of steel, is not rationally related to the stated purpose of Proclamation 9980.

72.     The inclusion of certain derivative articles of steel manufactured in Taiwan in Proclamation 9980, and exclusion of identical derivative articles of steel manufactured in Argentina, Australia, Brazil, Canada, Mexico, or South Korea, despite derivative articles manufactured in some of the excluded countries displacing a greater portion of domestic demand for articles of steel, is not rationally related to the stated purpose of Proclamation 9980.

73.     Because there is no legitimate governmental purpose for the disparate treatment of Plaintiff, Proclamation 9980 violates equal protection and is unconstitutional.

**PRAYER FOR RELIEF**

WHEREFORE, and as challenged herein, Plaintiff respectfully prays that this Court:

(1)      Enter judgment in favor of Plaintiff and declare Proclamation 9980 unlawful;

(2)      Refund to Plaintiff any duties collected or assessed on its imported articles pursuant to Proclamation 9980;

(3)      Award Plaintiff costs and any reasonable attorneys' fees and expenses; and

(4)      Grant such additional relief as the Court may deem just and proper.

Respectfully Submitted,

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP

*/s/ Erik D. Smithweiss*
Erik D. Smithweiss
William F. Marshall

599 Lexington Avenue, 36th Floor
New York, NY 10022
(212) 557-4400

*Counsel for Plaintiff CarParts.com, Inc.*

Dated: April 13, 2022

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to USCIT R. 4(b) and (h), I hereby certify that on April 13, 2022, I caused copies of Plaintiffs' Summons and Complaint to be served on the following parties by certified mail, return receipt requested:

Attorney-In-Charge International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278

Director, Civil Division
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

Chief Counsel Scott K. Falk
Office of Chief Counsel
U.S. Customs & Border Protection
26 Federal Plaza
New York, NY 10278

Gina Raimondo
Secretary of Commerce
Office of the Secretary, U.S. Department of Commerce
1401 Constitution Ave., N.W.
Washington, D.C. 20230

Chris Magnus
Commissioner, U.S. Customs and Border Protection
1300 Pennsylvania Ave., N.W.
Washington, D.C. 20229

Robert Heilferty, Esq.
Office of General Counsel
Trade Enforcement and Compliance
U.S. Department of Commerce
14th Street & Pennsylvania Ave., NW
Washington, D.C. 2023

Joseph R. Biden
President of the United States
The White House

1600 Pennsylvania Avenue NW.,
Washington, D.C. 20500

Dana A. Remus
White House Counsel
Executive Office of the President
1600 Pennsylvania Avenue NW.,
Washington, DC 20500

*/s/ Erik D. Smithweiss*
Erik D. Smithweiss